UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ESTATE OF MICHAEL LEE JACKSON,

       Plaintiff,                                  Case Number 11-15215-BC

v.                                           Honorable Thomas L. Ludington

OFFICER STACY SCHAUB, CLINICIAN PATRICK
COUSINEAU, OFFICER JULAYNE CARRIER,
OFFICER CHRISTOPHER LEONARD, SHERIFF
LEO MIODUSZEWSKI, LIEUTENANT TOM RECKER,

       Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
PATRICK COUSINEAU'S MOTION TO DISMISS, CANCELING HEARING, AND
DISMISSING PLAINTIFF'S GROSS NEGLIGENCE CLAIMS AGAINST DEFENDANT
COUSINEAU WITH PREJUDICE**

In October 2009, Michael Lee Jackson ("Jackson") was being held at the Isabella County

Jail ("the jail") on charges related to check forgery. He had previously been housed at the jail and

had been placed on suicide watch in April 2007 and on suicide precaution in July 2009. During

Jackson's July 2009 stay, Defendant Cousineau allegedly had evaluated Jackson and determined that

placing Jackson on suicide precaution was necessary due to Jackson's depression, feelings of

worthlessness or guilt, and auditory and visual hallucinations. Jackson also allegedly made suicidal

statements to jail officers at this time.

Upon Jackson's booking in October 2009 on the check forgery charges, a health risk

appraisal was not completed because one had been done within the previous 90 days. Jackson was

subsequently placed in a maximum security cell due to an incident with another inmate. Jackson

was seen by Defendant Cousineau the same day, allegedly for issues regarding depression, feelings

of worthlessness or guilt, and auditory and visual hallucinations. On November 29, 2009, Jackson

is alleged to have exhibited unbalanced emotional and mental symptoms including, but not limited to, having conversations with himself, pacing in his cell, making statements that he was "close to the edge" and there would be "no coming back." Later that day, corrections officers discovered Jackson hanging from his cell by a bed sheet removed from his bed.

On November 28, 2011, Jackson's estate ("Plaintiff") filed a complaint against a number of corrections officers, including Patrick Cousineau who is a counselor from Community Mental Health, alleging claims of deliberate indifference and gross negligence pursuant to 42 U.S.C. § 1983 and Michigan's Government Tort Liability Act, Mich. Comp. Laws § 691.1407.  Specifically related to Defendant Cousineau, Plaintiff alleges that Cousineau was retained by the jail, or acting under the jail's direction, in providing assessment and mental health care for Jackson and thus had actual knowledge that Jackson had a history or suicidal tendencies, was experiencing depression, hallucinations, and was exhibiting a strong likelihood that he would commit suicide. Plaintiff further alleges that Cousineau had a special relationship with Jackson that required Cousineau to take appropriate action to prevent Jackson from harming himself. Plaintiff alleges that Cousineau was deliberately indifferent and grossly negligent in responding to Jackson's serious medical need.

Defendant Cousineau now seeks to have the claims against him dismissed because Plaintiff has not alleged a valid claim for deliberate indifference to a serious medical need and because Plaintiff has not complied with Michigan's tort reform measures required for pleading a claim for gross negligence.  For the reasons stated herein, Defendant Cousineau's motion to dismiss will be denied as to Plaintiff's claim for deliberate indifference and granted as to Plaintiff's claim for gross negligence.

## I.    Standard of Review

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir.1993). When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Sixth Circuit has held that a court may consider allegations contained in the complaint, as well as exhibits attached to or otherwise incorporated in the complaint, all without converting a motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

-3-

## II.    Discussion

### A.    Plaintiff's Claim for Deliberate Indifference to a Serious Medical Need

An inmate has adequately stated a cause of action "when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). The inquiry into whether a prison official acted with deliberate indifference has both an objective and subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). In order to satisfy the objective component, the prisoner must show that the medical need is "sufficiently serious." *Id.* at 702-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To satisfy the subjective component, the prisoner must allege facts which show that the prison official had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *Comstock*, 273 F.3d at 703. It must be shown that the official acted with reckless disregard for a substantial risk to the prisoner, that he drew the inference, and that he disregarded the risk. *Farmer*, 511 U.S. at 836-37.

The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Farmer*, 511 U.S. at 835 (noting that deliberate indifference "describes a state of mind more blameworthy than negligence"). When a prison or jail official provides treatment, albeit carelessly or inefficaciously, to an inmate, he has not displayed

-4-

a deliberate indifference to the inmate's needs, but "merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d at 703.

On the other hand, a plaintiff need not show that the official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835; *see also Horn v. Madison County Fiscal Court et al.*, 22 F.3d 653, 660 (6th Cir. 1994) ("Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain."). Instead, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. A defendant, however, may "not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843 n.8. Because suicide is a difficult event to predict and prevent, and often occurs without warning, the Court should inquire, in addition, whether the decedent demonstrated a strong likelihood that he would attempt to take his own life in such a manner that failure by the prison official to take adequate precautions amounted to deliberate indifference to the inmate decedent's serious medical needs. *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) (citation and quotation omitted).

Cousineau argues that the factual allegations in the complaint are insufficient to support the conclusion that he had knowledge of a strong likelihood that Jackson would commit suicide. More specifically, Cousineau emphasizes that Plaintiff has only offered a conclusory statement that he knew of a strong likelihood that Jackson would commit suicide without providing any factual allegations to support this statement. Moreover, Cousineau notes that the complaint alleges that Jackson began exhibiting an unbalance emotional and mental state ten days after being treated by

-5-

Cousineau, and does not allege that Cousineau was advised of Jackson's change in behavior. Because the complaint does not allege facts demonstrating that Cousineau was aware of a strong likelihood that Jackson would take his life, Cousineau requests that this claim be dismissed pursuant to Rule 12(b)(6). The remainder of Cousineau's arguments request that the Court make a factual determination that he did not act with deliberate indifference, which may not be done when considering a Rule 12(b)(6) motion.

Taking Plaintiff's allegations as true and viewing them in a light most favorable to Plaintiff, the complaint has sufficiently stated a claim that Cousineau had knowledge of Jackson's serious medical needs and was deliberately indifferent to those needs. Cousineau had evaluated Jackson in July 2009, and allegedly put Jackson on suicide precaution due to Jackson's expression of depression, feelings of worthlessness or guilt, and auditory and visual hallucinations. When Cousineau treated Jackson again in November 2009, Jackson allegedly expressed the same symptoms as in July 2009 but was not placed on suicide precaution, and a trier of fact could conclude that Cousineau drew the inference that there was a substantial risk that Jackson would commit suicide but disregarded that risk. Whether Cousineau did not act deliberately indifferent in making this decision and whether Jackson's suicide ten days later is too remote in time to constitute a constitutional violation for deliberate indifference against Cousineau is a factual issue that may not be determined by the Court in reviewing a Rule 12(b)(6) motion to dismiss. Plaintiff has adequately stated a claim for deliberate indifference in the complaint, and the motion to dismiss will be denied.

### B. Plaintiff's Claim for Gross Negligence

Cousineau also seeks dismissal of Plaintiff's gross negligence claim against him because the

claim sounds in medical malpractice. In *Bryant v. Oakpointe Villa Nursing Centre, Inc.*, 471 Mich. 411, 422 (2004), the Michigan Supreme Court held that a claim should have been filed as a medical malpractice claim if (1) the claim pertains to an action that occurred within the course of a professional relationship; and (2) the claim raises questions of medical judgment beyond the realm of common knowledge and experience. A "professional relationship" exists when a licensed health care professional is subject to a contractual duty that requires the health care professional to render professional health care services to the decedent. *Id.* at 425. Plaintiff alleges that Patrick Cousineau is a counselor. Counselors are licensed health care professionals under the Michigan public health code. *See* Mich. Comp. Law § 333.18101. Cousineau notes that at the time of Jackson's treatment, he was a master limited social worker. Social workers are also licensed under Michigan's public health code. Mich. Comp. Laws § 333.18509. Cousineau argues that, as alleged, a professional relationship existed between him and Jackson.

"[M]edical judgment beyond the realm of a common knowledge and experience" is necessary, if the reasonableness of the health care professional's actions "can only be evaluated by the jury after being presented with standard of care testimony by an expert." Bryant, 471 Mich. at 423. A complaint cannot avoid the application of the procedural requirements of a malpractice action by couching its cause of action in terms of ordinary negligence. *McLeod v. Plymouth Court Nursing Home*, 957 F. Supp. 113, 115 (E.D. Mich. 1997) (citation omitted) The gravamen of an action is determined by reading the claim as a whole and it is essential to look beyond the procedural labels to determine the exact nature of the claim. *Tipton v. William Beaumont Hosp.*, 266 Mich. App. 27, 33 (2007).

Plaintiff alleges Cousineau was grossly negligent in failing or refusing to respond to the

-7-

strong, clear likelihood of the decedent's suicidal intentions by failing to provide medical care or mental health care. Cousineau contends that an ordinary layperson does not know the signs and symptoms a counselor should look for in determining if an individual is suicidal and if special precautions need to be taken to prevent that individual from committing suicide and expert testimony is thus required on this subject. As such, the claims of gross negligence against Cousineau, must be considered professional malpractice. In order to initiate a medical or professional malpractice claim, a plaintiff is required to comply with the Michigan tort reform. Mich. Comp. Laws § 600.2912d; Mich. Comp. Laws § 600.2912b. Failure to comply with tort reform requires dismissal. *Roberts v. Mecosta Gen. Hosp.*, 470 Mich. 679 (2004); *Nippa v. Botsford General Hosp.*, 257 Mich. App. 387 (2003). Cousineau asserts that Plaintiff did not mail a Notice of Intent to him as required by Mich. Comp. Laws § 600.2912d. Plaintiff also did not file an Affidavit of Merit with the complaint as required by Mich. Comp. Laws § 600.2912b. Because the court in *Lee v. Putz*, 2006 WL 1791304 (W.D. Mich. 2006), concluded that § 600.2912d is substantive in nature and thus applicable in a federal court case, dismissal pursuant to Rule 12(b)(6) is required.

"A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (citation and quotation omitted). In order to have a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth

Amendment." *Id.* (citation and quotation omitted).  As previously noted, the key to identifying a malpractice claim is whether the claim alleges that the negligence occurred within the course of a professional relationship, and that the procedural requirements of a medical malpractice claim should apply when the alleged facts raise issues that are beyond the common knowledge or experience of the jury or, alternatively, raise questions involving medical judgment. *Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 45-46 (1999).

In response, Plaintiff relies on *Danese v. Asman*, 670 F. Supp. 709, 718 (E.D. Mich. 1987), where the court acknowledged that the term "gross negligence" evades easy definition but that a person may be said to act in such a way as to trigger a section 1983 claim if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow. The court also noted that the gross negligence standard is similar to the deliberate indifference standard. *Id.*  As a result of this conclusion, Plaintiff contends that the complaint adequately states a claim for deliberate indifference to a serious medical need "and/or" gross negligence pursuant to section 1983, and Michigan tort reform laws do not apply. Plaintiff does not provide a response to Cousineau's argument that Plaintiff's state law claim for gross negligence should be dismissed.

Plaintiff's claim for gross negligence pursuant to Michigan state law alleges that the negligence occurred within the course of a professional relationship and raises a question involving medical judgment, thus sounding in medical malpractice. Because Plaintiff did not comply with Michigan's tort reform requirements, Plaintiff's state law claim for gross negligence will be dismissed.  Cousineau, however, offers no caselaw to suggest that a 1983 gross negligence claim requires compliance with state tort reform requirements.

There is nevertheless case law that suggests that constitutional claims asserted under § 1983 must be premised on more than mere negligence, or even gross negligence. In *Collins v. City of Harker Heights*, 503 U.S. 115 (1992), the Supreme Court held that gross negligence is not the type of government action needed to support a Section 1983 claim. The Sixth Circuit has consistently adopted this rationale. "Gross negligence is not actionable under § 1983, because it is not 'arbitrary in the constitutional sense.' " *Lewellen v. Metropolitan Gov't of Nashville*, 34 F.3d 345, 351 (6th Cir. 1994) ("But the injuries suffered by plaintiff Lewellen, like the death of Mr. Collins, resulted from what at worst was gross negligence. Gross negligence is not actionable under § 1983, because it is not 'arbitrary in the constitutional sense.' ")(citing *Collins*, 112 S. Ct. at 1071); *Gazette v. City of Pontiac*, 41 F.3d 1061 (6th Cir. 1994). Plaintiff's § 1983 gross negligence cause of action will also be dismissed for failure to state a claim.

## III

It is **ORDERED** that Defendant Cousineau's motion to dismiss (ECF No. 12) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the hearing scheduled for May 2, 2012 is **CANCELED** because oral argument will not aid in the disposition of the motion. E.D. Mich. L.R. 7.1(f)(2).

It is further **ORDERED** that Plaintiff's state and federal gross negligence claims against Defendant Cousineau are **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 9, 2012

-10-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 9, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS